IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

JOHN T. DAVENPORT,                  :

    Plaintiff,                  :

vs.                                 :
                                            CIVIL ACTION 04-0745-M
JO ANNE B. BARNHART,                :
Commissioner of
Social Security,                    :

    Defendant.                  :


MEMORANDUM OPINION AND ORDER

In this action under 42 U.S.C. §§ 405(g) and 1383(c)(3), Plaintiff seeks judicial review of an adverse social security ruling which denied claims for disability insurance benefits and Supplemental Security Income (*SSI*). The parties filed written consent and this action has been referred to the undersigned Magistrate Judge to conduct all proceedings and order the entry of judgment in accordance with 28 U.S.C. § 636(c) and Fed.R.Civ.P. 73 (*see* Doc. 16). Oral argument was heard on July 25, 2005. Upon consideration of the administrative record, the memoranda of the parties, and oral argument, it is **ORDERED** that the decision of the Commissioner be **AFFIRMED** and that this action be **DISMISSED**.

This Court is not free to reweigh the evidence or substitute its judgment for that of the Secretary of Health

and Human Services, *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983), which must be supported by substantial evidence. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). The substantial evidence test requires "that the decision under review be supported by evidence sufficient to justify a reasoning mind in accepting it; it is more than a scintilla, but less than a preponderance." *Brady v. Heckler*, 724 F.2d 914, 918 (11th Cir. 1984), *quoting Jones v. Schweiker*, 551 F.Supp. 205 (D. Md. 1982).

    Plaintiff was born April 11, 1956.  At the time of the administrative hearing, Davenport was forty-five years old, had attended college classes (Tr. 41), and had previous experience doing security work (Tr. 43).  In claiming benefits, Plaintiff alleges disability due to depression (Doc. 12).

    The Plaintiff protectively filed applications for disability benefits and SSI on October 2, 2000 (Tr. 100-04, 313-15).  Benefits were denied following a hearing by an Administrative Law Judge (ALJ) who determined that although Davenport could not return to his past relevant work, he was able to perform light-exertion jobs as a janitor, a mail clerk in a non-postal capacity, and a laborer in a non-construction capacity (Tr. 13-28).  Plaintiff requested review of the

hearing decision (Tr. 323-35) by the Appeals Council, but it was denied (Tr. 6-9).

Plaintiff claims that the opinion of the ALJ is not supported by substantial evidence. Specifically, Davenport alleges that the Appeals Council did not properly consider newly submitted evidence from Plaintiff's treating physician (Doc. 12). Defendant has responded to—and denies—these claims (Doc. 13).

Before examining the evidence, the Court notes that Davenport has asked the Court to consider evidence submitted to the Appeals Council after the ALJ rendered his opinion (Doc. 12, pp. 6, 8-10). That evidence is found at Tr. 326-28.

It should be noted that "[a] reviewing court is limited to [the certified] record [of all of the evidence formally considered by the Secretary] in examining the evidence." *Cherry v. Heckler*, 760 F.2d 1186, 1193 (11th Cir. 1985). However, "new evidence first submitted to the Appeals Council is part of the administrative record that goes to the district court for review when the Appeals Council accepts the case for review as well as when the Council denies review." *Keeton v. Department of Health and Human Services*, 21 F.3d 1064, 1067 (11th Cir. 1994). However, "when the [Appeals Council] has

denied review, we will look only to the evidence actually presented to the ALJ in determining whether the ALJ's decision is supported by substantial evidence." *Falge v. Apfel*, 150 F.3d 1320, 1323 (11th Cir. 1998), *cert. denied*, 525 U.S. 1124 (1999).

If, however, the Appeals Council accepts the case for review, we consider that new evidence as well, though it is to be examined differently from the balance of the evidence. *See* Falge, 150 F.3d at 1323. *Keeton* directs this Court to look at the new evidence and determine whether it meets the three-prong standard for remanding this action. *Keeton*, 21 F.3d at 1068. To make a determination of remand, "the claimant must establish that: (1) there is new, noncumulative evidence; (2) the evidence is 'material,' that is, relevant and probative so that there is a reasonable possibility that it would change the administrative result, and (3) there is good cause for the failure to submit the evidence at the administrative level." *Caulder v. Bowen*, 791 F.2d 872, 877 (11th Cir. 1986).

In examining the action at hand, the Court notes that the Appeals Council denied review of the additional evidence, saying that the objections to the decision and the additional evidence "do[] not provide a basis for changing the Administrative Law Judge's decision" (Tr. 6-7). The Court

4

further notes that Plaintiff challenges the Appeals Council's decision to deny review of the new evidence (Doc. 12, 8-10). Therefore, this Court will need to review evidence of record as well as the new evidence to determine if the Appeals Council properly denied review.

On April 17, 1997, Dr. Clyde Rouse first examined Plaintiff who told him of his history with mental illness, including two suicide attempts and hospitalization; though depressed, Davenport was eating and sleeping well and his medications, Effexor and Risperdal,[1] were keeping him stable (Tr. 250-52). Eight days later, it was noted that Plaintiff was "functioning in the low average range of intellectual functioning. His mood was euthymic. He appears stable. Thought processes and associations appeared to be clear and intact. Client did not appear manic or depressed" (Tr. 249). On September 4, 1997, Davenport reported no problems; Rouse diagnosed him to have chronic major depression in full remission as well as a personality disorder with borderline features (Tr. 247-48). On October 31, 1997, the doctor noted that Plaintiff's mood was euthymic and there was no evidence of psychosis (Tr. 246). Rouse's assessment was as follows:

---

[1] *Effexor* is used "for the treatment of depression." *Physician's Desk Reference* 3037 (52nd ed. 1998). *Risperdal* is used "for the management of the manifestations of psychotic disorders." *Physician's Desk Reference* 1310-13 (52nd ed. 1998).

"The patient continues to show some signs of symptoms of depression.  His affect is very blunted and he exhibited psychomotor retardation.  He does not seem to care what happens to him;" the doctor increased Davenport's dosage of Paxil[2] (*id.*).  On January 28, 1998, Plaintiff told Rouse that he was "feeling somewhat better" and the doctor thought that he was "doing relatively well on [the] medical regime" (Tr. 245).  On April 16, Davenport report that he was less depressed; Rouse found him to be stable (Tr. 244).  On July 15, Plaintiff said that he was "feeling fine;" the doctor noted that Davenport did "not present any delusional material" and was stable on Paxil (Tr. 242).  On October 14, 1998, Dr. Rouse saw no evidence of depression (Tr. 241).  On April 29, 1999, Davenport was "alert, oriented, and cooperative [with] affect [] appropriate to his euthymic mood;" the doctor noted that Plaintiff was "psychiatrically stable enough that it is not necessary for him to have nurses appointments monthly" (Tr. 240).  On September 22, 1999, Plaintiff admitted having a "significant problem" with experiencing pleasure; noting that Davenport was improved overall though still having some "persistent symptoms of depression," Rouse continued the

---

[2]*Paxil* is used to treat depression.  *Physician's Desk Reference* 2851-56 (52nd ed. 1998).

prescription for Paxil but added Wellbutrin[3] to his regimen (Tr. 238).  On February 23, 2000, Davenport reported that the added medication had improved his mood significantly; again Rouse found Plaintiff stable enough to cancel the nurse's visits (Tr. 237).  On May 17, 2000, Davenport said that he was "doing extremely well;" the doctor noted the following: "Today, John is very relaxed and calm.  His eye contact is good.  His spirits are high.  His thinking is clear and goal directed.  He denied psychotic symptoms or suicidal or homicidal ideation.  His concentration is good.  He is eating and sleeping well.  Insight and judgment are good" (Tr. 236).  On October 11, 2000, Dr. Rouse noted that although Plaintiff had been attacked, beaten and stabbed by a group of people which caused permanent nerve damage, he was doing well and was "stable on current medications" (Tr. 234).  On January 3, 2001, the doctor noted that Davenport was in good spirits; "[c]ognitively, he is intact.  Insight and judgment are good" (Tr. 233).  On March 28, 2001, Dr. Rouse found Plaintiff "stable on current medications" but revised his diagnosis from Bipolar I Disorder to Major Depressive Disorder, recurrent and moderate (Tr. 301).  On September 5, 2001, Davenport told the doctor that he was doing extremely well on his medical regimen

---

[3]*Wellbutrin* is used for treatment of depression.  *Physician's Desk Reference* 1120-21 (52nd ed. 1998).

and had plenty of energy; the doctor found him stable and cut his Wellbutrin dose in half (Tr. 298).  This is apparently the last note from Dr. Rouse before the ALJ rendered his decision.

Based on this medical evidence as well as the records from consultative psychological (*see* Tr. 253-56), psychiatric[4] (*see* Tr. 287-92), and physical exams (*see* Tr. 257),[5] the ALJ found Plaintiff capable of performing a diminished—yet significant— range of light work (Tr. 13-28).  The Court does not read the ALJ's opinion to discredit Dr. Rouse's opinion or diagnosis in any way and Davenport has not asserted otherwise.  Plaintiff's challenge is that the Appeals Council denied review of the ALJ's decision even after viewing the newly-submitted evidence (Doc. 12, pp. 8-10).  That evidence is as follows.

On June 19, 2002, more than nine months after the last medical note from this physician, Dr. Rouse stated that Davenport had reported "doing very well;" the doctor stated that Plaintiff was "stable on current medications in terms of his depression" (Tr. 332).  A month later, Dr. Rouse completed

---

[4]The Court notes that Plaintiff and the ALJ characterize this examination as being psychological (Doc. 12, p. 7; Tr. 22).  Though it bears the signature of Psychologist W. G. Brantley, it was also signed by Psychiatrist Charles H. Smith (Tr. 287).

[5]The Court finds it unnecessary to summarize these examinations as they support the ALJ's conclusions and have not been challenged here.

a form in which he indicated that Plaintiff had marked limitations in his ability to respond appropriately to co-workers and customers or other members of the general public, in using judgment in detailed or complex work-related decisions, in understanding, remembering, and carrying out simple, one or two-step, instructions, in responding to customary work pressures and in maintaining activities of daily living (Tr. 327-28).  Rouse further indicated that Davenport was extremely limited in his ability to respond appropriately to supervisors, in dealing with changes in a routine work setting, in understanding, remembering, and carrying out detailed or complex instructions, in maintaining attention, concentration or pace for periods of at least two hours, and in maintaining social functioning (*id.*).  Additionally, the doctor wrote the following in the margins:

> [Davenport] is often too paranoid to even talk to people he doesn't know well.
> He doesn't respond well to authority-his impulse control is poor; he is very anxious and cannot tolerate being with groups of people.
> When very depressed, [he] is almost paralyzed and must remain in his home.  Anxiety interferes with concentration.  He has had homicidal and suicidal thoughts in the past.  All this is with him being very medication compliant.

Tr. 323.  On the treatment dates of March 20, 2003 (Tr. 333),

June 19, 2003 (Tr. 334), and December 4, 2003 (Tr. 335), Rouse's assessment was that "Patient is stable on current medications."

After reviewing the newly-submitted evidence to the Appeals Council, the Court finds that the three-prong *Caulder* standard has not been met.  Without discussing the first or third prongs, the Court finds that the second prong has not been met; specifically, Davenport has failed to show that "the evidence is 'material,' that is, relevant and probative so that there is a reasonable possibility that it would change the administrative result."  *Caulder*, 791 F.2d at 877.  The Court notes that Rouse's statements of extreme limitation are totally unsupported by his own treatment notes—both before and after the statements were made—as well as any other medical evidence of record.

The Court is aware of *Higgenbotham v. Barnhart*, 405 F.3d 332, 336 (5th Cir. 2005)[6] which held that the the Commissioner's "final decision" includes the Appeals Council's denial of a claimant's request for review.  However, that is not the law of this Circuit.  *Falge* and *Keeton* lead the Court to the conclusion that Plaintiff's claim that the Appeals

---

[6]The Court is also mindful that neither party has cited this case.  Because it is not binding in this Circuit, there is no expectation that they would have cited it.

10

Council improperly denied review is without merit.

Upon consideration of the entire record, the Court finds "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Perales*, 402 U.S. at 401.  Therefore, it is **ORDERED** that the Secretary's decision be **AFFIRMED**, *see Fortenberry v. Harris*, 612 F.2d 947, 950 (5th Cir. 1980), and that this action be **DISMISSED**.  Judgment will be entered by separate order.

DONE this 25th day of July, 2005.

                                    s/BERT W. MILLING, JR.
                                    UNITED STATES MAGISTRATE JUDGE